UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Floe International, Inc.;
and Wayne G. Floe,

        Plaintiffs,

v.

Newmans' Manufacturing Incorporated,

        Defendant,

and

Newmans' Manufacturing Incorporated,

        Counter-Claimant,

v.

Floe International, Inc.; and
Wayne G. Floe,

        Counter-Defendants.

Civil No. 04-5120 (DWF/RLE)

**MEMORANDUM
OPINION AND ORDER**

_____

Chad Drown, Esq., Timothy E. Grimsrud, Esq., David J. F. Gross, Esq., James W. Poradek, Esq., and Lee M. Pulju, Esq., Faegre & Benson LLP, counsel for Plaintiffs.

Douglas J. Frederick, Esq., Max C. Ramsey, Esq., and Patrick J. Sauter, Esq., Rider Bennett LLP, counsel for Defendant.

_____

## Introduction

This matter is before the Court pursuant to a Motion for Enhanced Damages, Attorneys' Fees, Costs, Prejudgment Interest, Accounting of Infringing Units, and

Permanent Injunction brought by Plaintiffs Floe International, Inc., and Wayne G. Floe (collectively, "Floe"). For the reasons stated below, the motion is granted.

## Background

Floe and defendant Newmans' Manufacturing Incorporated ("Newmans"), both Minnesota corporations, are direct competitors in the snowmobile trailer market. In its Complaint, Floe asserted that Newmans made and sold snowmobile trailers that infringe United States Patent No. 5,738,379 (the "'379 Patent"), a patent issued to Wayne Floe. The '379 patent describes a trailer frame member specially adapted for hauling snowmobiles. Specifically, Floe contended that Newmans' SLED BED™ trailers infringe the '379 Patent. Newmans counterclaimed for a declaratory judgment that the '379 Patent is invalid. The Court conducted a jury trial in July 2006. After all the evidence was presented, the Court found that Newmans infringed the '379 Patent as a matter of law.

On July 20, 2006, the jury returned a special verdict, finding that the '379 Patent was not invalid. The jury found that $21 per trailer was a reasonable royalty rate and awarded Floe $643,881 in damages. Finally, the jury found that Newmans willfully infringed the '379 Patent. Following the jury trial, the Court scheduled a hearing on Newmans' inequitable-conduct defense. Prior to the hearing, however, the Court granted Floe's motions in limine precluding Newmans from introducing evidence related to Newmans' on-sale bar defense, which the jury rejected, and theories of inequitable conduct that were never pled. As a result, the Court did not conduct a hearing on

Newmans' inequitable-conduct defense. Newmans made a Rule 104 offer of proof on the issue of inequitable conduct, which is part of the record.

## Discussion

### I.     Enhanced Damages

The jury's finding of willfulness permits the Court to award Floe with as much as treble damages under 35 U.S.C. § 284. The decision to award damages involves two steps. *Transclean Corp. v. Bridgewood Services, Inc.*, 290 F.3d 1364, 1377 (Fed. Cir. 2002); *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1570 (Fed. Cir. 1996). The first step is satisfied when the fact-finder determines that the infringer engaged in culpable conduct. *Transclean*, 290 F.3d at 1377. The jury's finding of willfulness satisfies the first step. *Id.* For the second step, the Court exercises its discretion in determining whether to increase the damage award.

The Federal Circuit has set forth nine factors that the Court should consider in determining whether to enhance damages. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992). Those factors include: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, upon learning of the patent, investigated and formed a good-faith belief that the patent was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the infringer's size and financial condition; (5) the closeness of the case; (6) duration of the infringer's misconduct; (7) remedial action by the infringer; (8) the infringer's motivation for harm; and (9) whether the infringer attempted to conceal its misconduct. *Id.* at 827. After considering these factors and the totality of the circumstances, the Court has determined

3

that enhancing damages is appropriate in this case. The Court will address each factor in turn.

### A. Deliberate Copying

Floe contends that the record contains evidence that permits the inference that Newmans deliberately copied the rear member design of a Floe aluminum trailer. In particular, Floe notes that Doug Newman, Newmans' President, admitted that he saw the Floe trailer at a convention in the fall of 1991. Floe further notes that the accused device, Newmans' extruded aluminum trailer with the patented rear member, was not sold until the next year, in 1992. Thus, according to Floe, the Court could conclude that Newmans copied the Floe trailer. Newmans, on the other hand, contends that Floe has never alleged that Newmans deliberately copied the invention claimed in the '379 Patent and that no evidence exists of deliberate copying. The Court agrees. There is no evidence of deliberate copying in the record. The Court rejects Floe's argument because it is speculative. Thus, this factor weighs against enhancing damages.

### B. Investigation and Good-Faith Belief of Invalidity or Non-Infringement

Floe asserts that the jury found that Newmans lacked a good-faith belief that Newmans could manufacture its trailers without infringing the '379 Patent when the jury determined that Newmans willfully infringed. According to Floe, the jury's finding of willful infringement means that Newmans did not exercise due care to investigate whether its SLED BED™ trailer infringes any valid, enforceable claim of the '379 Patent. Newmans, however, contends that it investigated the scope of the '379 Patent and formed a good-faith belief that the patent was invalid. In support of its contention,

4

Newmans points out that after Wayne Floe asserted his charge of infringement, Newmans retained a patent attorney, Stephanie James, who opined that the '379 Patent was invalid.

The Court's instructions to the jury are important. Here, the jury instructions on willful infringement provided in part:

> When a person becomes aware that a patent may have relevance to his or her activities, that person has a duty to exercise due care and to investigate whether or not his or her activities or proposed activities infringe any valid, enforceable claim of the patent. If that person did not do this and is found to have infringed any of the patent claims, then the infringement is willful.

The jury instructions also provided that "Floe must prove that Newmans infringed without a good faith belief that the patent was invalid, unenforceable and/or not infringed." The jury instructions further stated that in determining whether or not Newmans acted in good faith, the jury should consider "whether or not Newmans obtained and followed the advice of a competent lawyer." Given these instructions, the jury has already determined that Newmans lacked a good-faith belief of invalidity when it found that Newmans' infringement was willful. Thus, Newmans' arguments are aimed at revisiting the jury's determination of willful infringement. The Court accepts the jury's determination of lack of good faith and will not reweigh the evidence. *See Jurgens*, 80 F.3d at 1572 (holding that the court did not have discretion to reweigh the evidence about the competency of an attorney's decision or the defendant's reliance on it where the jury rejected the defendant's assertion that the defendant acted in good faith). Accordingly, the Court finds that this factor weighs in favor of enhancing damages.

    **C.**    **Litigation Conduct**

5

Floe contends that Newmans has employed a litigation strategy that entails driving up costs until they are equal or greater than the damages sought by Floe. According to Floe, Newmans wanted to make enforcing the '379 Patent so costly that it would not be worth pursuing. Floe contends that Newmans' alleged unnecessary litigation conduct and the costs of responding to Newmans' conduct are exhibited by many events.

First, Floe contends that Newmans' motion for summary judgment was unnecessary and baseless. Floe points out that in Newmans' motion for summary judgment, Newmans argued that the claims of the '379 Patent were invalid without conducting the basic step of interpreting the relevant claims. Further, Floe asserts that Newmans provided no evidence to support its obviousness or anticipation arguments. Floe also notes that Newmans knew that the on-sale bar and laches defenses were hotly-contested factual issues, yet raised them anyway. Additionally, Floe contends that at the summary judgment hearing, Newmans refused to concede that its 1991 aluminum trailers lacked the accused feature, despite Joel Newman's statement in a sworn declaration to the contrary. Floe also notes that Newmans tried to use undisclosed prior art and an untimely expert report on invalidity as part of its summary-judgment motion.

Next, Floe contends that Newmans brought unnecessary motions at the pre-trial stage. Floe notes that the Court denied nearly all of Newmans' twelve motions in limine. Floe contends that Newmans' motion for a continuance was a particularly egregious example of unnecessary litigation conduct because the motion was based on the production of irrelevant documents. Floe further asserts that Newmans' alleged strategy

continued into the trial, where Newmans refused to concede infringement and other defenses.

Floe explains that even after Newmans acknowledged that it would not have any expert testimony to support is non-infringement defense, Newmans required Floe to present evidence of infringement at trial. Floe contends that the Court was compelled to grant Judgment as a Matter of Law on the issue of infringement. Floe also contends that Newmans has never retained an expert to testify on obviousness or anticipation, nor did Newmans designate any witness on their witness list to testify regarding these issues. Nevertheless, according to Floe, Newmans refused to withdraw these defenses and thereby forced the Court to grant Judgment as a Matter of Law on both defenses. Floe also notes that Newmans never presented any testimony, let alone from one skilled in the art, comparing the Newmans' alleged 1991 steel trailers to the asserted claims of the '379 patent. Thus, according to Floe, Newmans failed to meet a known burden regarding Newmans' on-sale defense, requiring the Court to preclude such evidence. Additionally, Floe contends that Newmans' failed to disclose witnesses.

Finally, Floe alleges that Newmans pursued its inequitable-conduct defense in bad faith. Specifically, Floe alleges that Newmans never pled its inequitable-conduct defense with particularity and asserted several new theories following the jury trial. Floe points out that on several occasions the Court asked Newmans what specific theory of inequitable conduct Newmans intended to rely on. Floe contends that Newmans' latest theory of inequitable conduct, disclosed on August 8, the day before the inequitable conduct hearing was scheduled, was either intentionally withheld or conceived during the

7

delay following an August 4 conference call. Floe notes that during the August 4 conference call, Newmans did not disclose its latest inequitable-conduct theory, despite the Court's request for such information. Therefore, according to Floe, when Newmans introduced its latest inequitable-conduct theory on August 8, Newmans necessarily either withheld that theory from the Court on August 4 or conceived the theory during the weekend before the inequitable-conduct hearing. Either way, Floe asserts that Newmans' conduct was in bad faith.

In response, Newmans asserts that there is no basis in the record for concluding that it litigated in bad faith and that its conduct was either unethical or inappropriate during this litigation. Newmans contends that the Court's denial of its motions does not support a finding of litigation misconduct.

The Court rejects Floe's assertion that Newmans pursued a litigation strategy to drive-up costs so that enforcing the '379 Patent would not be worth pursuing. Floe's assertion might be more persuasive if Newmans were a significantly larger company than Floe and possessed the resources to overpower Floe. But here, the fact that the parties are both relatively small companies undermines such a purported litigation strategy. There is simply no incentive for Newmans to employ such a strategy. Nonetheless, the Court agrees that Newmans' litigation conduct unnecessarily increased costs. Here, Newmans brought premature claims in its summary judgment motion, refused to concede infringement and unsupported defenses, and raised several theories of inequitable conduct that it had not pled with particularity or even disclosed until the eve of the inequitable-conduct hearing. Although the Court does not find that Newmans acted in

bad faith, the Court finds that Newmans' litigation conduct unnecessarily increased costs. Thus, this factor weighs in favor of enhancing damages.

        **D.**    **Newmans' Size and Financial Condition**

Floe contends that the Court should not place undue weight on this factor. Specifically, Floe asserts that it would be unfair to Floe if Newmans is excused from enhanced damages based on its size and financial condition. In response, Newmans asserts that it is not a large corporation. Instead, it notes that it is a family-owned business that employs 60 people. Newmans contends that enhancing damages would significantly jeopardize the corporation's financial well-being.

The Court notes that Newmans and Floe are approximately the same size and in approximately the same financial condition. Both companies generate several million dollars of annual revenue. Although Newmans is a relatively small to medium-sized company, there is no evidence regarding how an award of enhanced damages would affect Newmans' financial well-being. Nonetheless, the Court finds that this factor weighs against enhancing damages based on Newmans' relatively small size.

        **E.**    **Closeness of the Case**

Floe contends that this case was not close because the Court determined as a matter of law that Newmans infringed the '379 Patent. Further, Floe notes that the Court entered Judgment as a Matter of Law on Newmans' § 102(b) defense regarding the sale and offer for sale of Newmans' own trailer and on Newmans' obviousness and anticipation defenses. Thus, Floe highlights the fact that Newmans had only one defense that was sent to the jury—that Floe sold a trailer prior to the critical date. Floe notes that

there was no testimony or other evidence that supported the theory that Floe sold a trailer prior to the critical date.  Further, Floe points out that the jury found Newmans' infringement to be willful.  Finally, Floe notes that the jury rejected Newmans' damages theory that the patented feature was worth less than $2, or the cost of a big bag of Skittles, per unit.

     Newmans asserts that the case was close because the jury took from July 19, 2006, until July 21, 2006, to reach a verdict.  The Court rejects Newmans' assertion that the fact that the jury deliberated for two days means that the case was close.  The length of jury deliberations generally does not indicate whether a case is close or not.  Here, the Court determined as a matter of law, that Newmans infringed the '379 Patent.  Based on the evidence, the Court finds that Newmans' assertion of invalidity under the on-sale bar was not particularly close.  The Court precluded Newmans from arguing that Newmans offered its own trailer for sale prior to the critical date because Newmans failed to demonstrate that its trailer contained all the claim limitations at issue.  Thus, after directing verdicts on Newmans' defenses of anticipation and obviousness, Newmans was only left with the defense that Floe sold or offered to sell its own trailer prior to the critical date.  Newmans presented little evidence on this issue.  Moreover, the question of a reasonable royalty rate was not particularly close.  In fact, the Court found Newmans' expert's contention that the patented feature was worth only $2 to be extreme and unpersuasive.  The question of willfulness, however, was a closer question.  Overall, though, the Court finds that this factor weighs in favor of enhancing damages.

F.   **Duration of the Misconduct**

Floe notes that despite knowledge of the '379 Patent, Newmans continued its infringement for over 7 years, resulting in 30,661 acts of infringement. Newmans admits that this factor weighs in favor of enhancing damages. However, Newmans contends that the duration of the infringement does not weigh as heavily against Newmans as it otherwise might because Floe did not file suit for more than six years after knowing of Newmans' infringement. The duration of the misconduct weighs in favor of enhancing damages. The Court agrees with Newmans' contention, however, that this factor is mitigated by Floe's six-year delay in initiating this lawsuit.

G.   **Remedial Action**

Floe contends that Newmans never took remedial action to cease infringement and never attempted to implement any design around the '379 Patent. Newmans explains that there is no evidence of remedial action because Newmans reasonably believed that the patent was invalid. The jury, however, rejected Newmans' assertion that they had a good-faith belief that the patent was invalid based on James' opinion. Therefore, this factor weighs in favor of enhancing damages.

H.   **Motivation for Harm**

Floe contends that the jury's finding that Newmans acted without a good-faith belief that the '379 Patent was invalid shows that Newmans had a motivation for harm. Floe also contends that Joel Newman's deposition statement that he thought Floe's patent was a "joke" is evidence of Newmans' motivation for harm. Alternatively, Floe contends that Newmans' conduct shows a reckless indifference to any harm suffered by Floe due

to Newmans' willful infringement.  Additionally, Floe contends that Newmans' litigation conduct evidences a motivation for harm.  Newmans, on the other hand, asserts that there is no evidence that Newmans was motivated, or intended, to harm Floe.

The Court has already rejected Floe's assertion that Newmans employed a litigation strategy designed to draw out the litigation and raise Floe's expenses.  The Court agrees, however, that the jury's finding that Newmans infringed without a good-faith belief that the patent was invalid shows a motivation for harm.  Thus, the Court finds that this factor weighs in favor of enhancing damages.

### I.     Concealment of Misconduct

Floe asserts that Newmans sought to conceal its infringing activity by insisting that the '379 Patent was invalid.  Newmans contends that there is no evidence that Newmans attempted to conceal its acts.  The Court agrees.  Newmans openly sold its SLED BED™ trailers.  Therefore, this factor weighs against enhancing damages.

After reviewing the totality of the circumstances and weighing the *Read* factors, the Court concludes that increased damages are warranted.  But given that some significant factors weigh against enhancing damages, the Court finds that double, rather than treble, damages are appropriate.  In particular, the facts that Newmans did not deliberately copy the '379 Patent or attempt to conceal its misconduct make Newmans less culpable than infringers who engage in such behavior.  Therefore, doubling the jury's award of $643,881 sufficiently punishes Newmans based on its culpability.  Thus, the Court awards Floe $1,287,762 in total damages.

**II.   Attorney Fees**

Under 35 U.S.C. § 285, the Court may award attorney fees to the prevailing party in "exceptional" cases. The Court may find that a case is "exceptional" based solely on the fact-finder's determination of willful infringement. *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1347 (Fed. Cir. 2004); *Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538, 543 (Fed. Cir. 1990). A finding of willful infringement, however, does not require a finding that a case is exceptional. *Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1461 (Fed. Cir. 1998). In determining whether a case is exceptional, the Court may weigh such factors as "the degree of culpability of the infringer, the closeness of the question, litigation behavior, and any other factors whereby fee shifting may serve as an instrument of justice." *Nat'l Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1197 (Fed. Cir. 1996).

Floe asserts that the jury's finding of willfulness, alone, renders this case "exceptional" and warrants an award of attorney fees. Additionally, Floe contends that Newmans' conduct during litigation served to unnecessarily delay the proceedings and increase expenses. In particular, Floe contends that Newmans brought unnecessary motions and refused to concede unsupported issues that increased Floe's attorney fees. Newmans, on the other hand, asserts that the *Read* factors weigh against finding that this is an "exceptional" case. Newmans further argues that even if the Court finds the case to be "exceptional," it should decline to award attorney fees based on Floe's alleged litigation misconduct.

The Court finds that this case is "exceptional" and grants Floe's request for attorney fees. The Court finds that this case is "exceptional" based on the jury's finding of willfulness and based on the weighing of the *Read* factors as discussed above. In particular, the Court finds that Newmans needlessly prolonged the litigation by bringing unnecessary motions and refusing to concede unsupported claims and defenses. Although the Court does not find that Newmans' litigation conduct was in bad faith, the Court finds that Newmans' prolonged litigation and unnecessarily increased Floe's attorney fees. *See Presto*, 76 F.3d at 1197 (instructing that the Court may consider a parties' litigation behavior, among other factors, in determining whether to award attorney fees). Although Floe's request of $475,000 in attorney fees sounds appropriate to the Court given the nature of the case and length of trial, the Court reserves the right to determine the exact amount of attorney fees after reviewing Floe's billing records. Thus, the Court directs Floe to submit unredacted billing records to the Court, and redacted versions of the same to Newmans, within two weeks of this Order. Newmans will then have five days thereafter during which it may review the records and file any objections.

## III.    Costs

Rule 54(d)(1) of the Federal Rules of Civil Procedure directs that "costs other than attorney's fees shall be allowed as of course to the prevailing party." As the prevailing party, Floe asserts that the Court should award it costs. Newmans concedes that Floe is entitled to costs, but asserts that Newmans should be given the opportunity to file objections to specific costs once Floe produces a list of costs. The Court will award Floe costs in an amount to be determined. The Court requests that Floe submit an itemized

14

bill of costs to the Court within two weeks from this Order. Newmans will then have five days thereafter during which it may review the records and file any objections.

## IV.   Prejudgment Interest

"[A] court should normally award prejudgment interest to afford the plaintiff full compensation for infringement." *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655 (1983). The purpose of prejudgment interest is "to ensure that the patent owner is placed in as good a position as he would have been had the infringer entered into a reasonable royalty agreement." *Id.* Prejudgment interest is normally awarded from the date of infringement to the date of payment. *Bio-Rad Lab., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 967 (Fed. Cir. 1986). The Court has discretion to determine the appropriate method of calculating interest, including the rate and whether to compound interest. *Id.* at 969.

Floe asserts that the Court should award prejudgment interest utilizing the U.S. Treasury bill rate. Floe also asserts that the interest should be compounded annually and calculated based on the number of infringing sales per year beginning December 30, 1998. Newmans does not contest Floe's right to prejudgment interest and agrees that the Court should use the U.S. Treasury bill rate. Newmans, however, asserts that prejudgment interest should be limited because of Floe's alleged undue delay in prosecuting this lawsuit. Thus, Newmans urges the Court to award prejudgment interest beginning December 30, 2004. Finally, Newmans requests that the Court calculate prejudgment interest on an after-tax basis.

The Court will award prejudgment interest in order to fully compensate Floe for Newmans' infringement. The Court will award prejudgment interest from the first date of infringement, December 30, 1998, and ending on the effective date of a permanent injunction. The Court finds that applying the U.S. Treasury bill rate will sufficiently compensate Floe for lost royalties. Further, the Court finds that compounding interest annually based upon each year's infringing sales provides Floe with fair compensation. *See Itron, Inc. v. Benghiat*, 2003 WL 22037710, at *17 (D. Minn. Aug. 29, 2003) (applying same method of calculating prejudgment interest).

Newmans cites *Century Wrecker Corp. v. E.R. Buske Mfg. Co., Inc.*, 913 F. Supp. 1256, 1282 (N.D. Iowa 1996), for the proposition that prejudgment interest should be limited because of Floe's alleged undue delay in prosecuting this lawsuit. In *Century Wrecker*, the Court concluded that a six-year delay in prosecution was not a sufficient justification for withholding prejudgment interest, but the Court did, however, grant a lesser amount than it could have in order to compensate for the delay in prosecution. *Id.* at 1282. In particular, the court applied the U.S. Treasury bill rate because that rate is lower than other possible rates, such as the prime rate. *Id.* at 1283. Thus, the court found that an award of prejudgment interest, compounded annually and calculated at the U.S. Treasury bill rate, was appropriate. *Id.* Here, the Court has employed the same methodology for calculating prejudgment interest as the Court in *Century Wrecker*. Because the U.S. Treasury bill rate is lower than other possible rates, the Court does not find that prejudgment interest should be further limited as a result of any delay in prosecution of this case.

16

Additionally, Newmans relies on *Electro Scientific Indus., Inc. v. General Scanning Inc.*, 247 F.3d 1341, 1354 (Fed. Cir. 2001), for the proposition that prejudgment interest should be calculated on an after-tax basis. The Court finds that *Electro Scientific* is inapposite because the court in that case applied a different interest rate. There, the court calculated damages based on the tax-free interest rate of plaintiff's money market account. *Id.* at 1354. Because the plaintiff's interest rate was tax-free, the award in *Electro Scientific* encompassed different tax implications than are present here. *Id.* Thus, the Court declines to calculate prejudgment interest on an after-tax basis and concludes that *Electro Scientific* does not stand for the general proposition that prejudgment interest should be calculated on an after-tax basis.

Thus, the Court will apply the U.S. Treasury bill rate, compounded annually, based on the number of infringing sales per year beginning on December 30, 1998, and ending on the effective date of a permanent injunction. Applying this methodology results in an award of $107,490 in prejudgment interest through May 2006. The number of infringing sales since May 2006 will be determined based on an updated accounting that Newmans will provide to the Court and Floe. Once the updated accounting is produced, the parties shall determine the amount of prejudgment interest due since May 2006 according to the Court's methodology.

**V.   Accounting**

"Courts 'routinely grant motions for further accounting' where the jury did not consider certain periods of infringing activity." *Itron*, 2003 WL at *15 (quoting *Stryker Corp. v. Davol, Inc.*, 75 F. Supp. 2d 746, 747 (W. D. Mich. 1999)). Floe requests an

accounting of SLED BED™ trailer units sold through the effective date of a permanent injunction. Newmans agrees to produce an accounting. Thus, within two weeks of the effective date of a permanent injunction, Newmans shall produce an accounting of units sold through that date.

## VI.     Permanent Injunction

Courts apply the following four factors when determining whether to award a permanent injunction: (1) whether the plaintiff has suffered an irreparable injury; (2) whether remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) whether considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted, and (4) whether the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 126 S. Ct. 1837, 1839 (2006). Here, Newmans stipulates to a permanent injunction enjoining it from practicing the invention claimed in Claims 1, 6, and 11 of the '379 Patent. Newmans, however, requests that the Court stay the injunction to allow Newmans to sell existing inventory having the claimed invention. Floe agrees that Newmans should have a reasonable amount of time to sell Newmans' existing inventory.

Therefore, after the parties agree to an effective date, the Court will issue a permanent injunction enjoining Newmans from practicing the invention claimed in Claims 1, 6, and 11 of the '379 Patent. The Court reserves the right to determine the precise terms of the permanent injunction at a later date. Within two weeks of this Order, the parties shall submit a joint letter to the Court setting forth the terms of the permanent injunction, including the effective date.

**ORDER**

Accordingly, **IT IS HEREBY ORDERED THAT:**

1. Plaintiffs' Motion for Enhanced Damages, Attorneys' Fees, Costs, Prejudgment Interest, Accounting of Infringing Units, and Permanent Injunction (Doc. No. 277) is **GRANTED AS FOLLOWS**.

   a. Plaintiffs are awarded enhanced damages in the amount of $643,881, for a total damage award in the amount of $1,287,762.

   b. Plaintiffs are awarded attorney fees and costs in an amount to be determined by the Court. Within two weeks from this Order, Plaintiffs shall submit billing records and a list of costs. Defendant will then have five days thereafter to object to any bill or cost.

   c. Plaintiffs are awarded prejudgment interest to be calculated using the U.S. Treasury bill rate, compounded annually, based on the number of infringing sales per year beginning on December 30, 1998, and ending on the effective date of the permanent injunction. Applying this methodology, Plaintiffs are awarded $107,490 in prejudgment interest through May 2006. The amount of prejudgment interest from June 2006 until the effective date of a permanent injunction will be determined at a later date.

   d. Plaintiffs request for an accounting of infringing units is granted. Defendant shall provide an accounting of SLED BED™ trailer units sold between June 2006 and the effective date of a permanent injunction, within two weeks of the effective date of the permanent injunction.

       e.       Plaintiffs' request for a permanent injunction is granted. Within two weeks of this Order, the parties shall submit a joint letter to the Court setting forth the terms of the permanent injunction, including the effective date.

Dated:  August 23, 2006                    s/Donovan W. Frank
                                                      DONOVAN W. FRANK
                                                      Judge of United States District Court